## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **JILL HOLIDAY,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| vs. | Case No. 2:21-cv-173-DAK-DBP |
| **PROGRESSIVE INSURANCE COMPANY,** | Judge Dale A. Kimball |
| **Defendant.** | Magistrate Judge Dustin B. Pead |

This matter is before the court on Defendant Progressive Direct Insurance Company's Motion to Compel Arbitration [ECF No. 25] and Plaintiff Jill Holiday's Motion for Partial Summary Judgment [ECF No. 35].   On April 7, 2022, the court held a hearing on the motions. At the hearing, Gabriel K. White and Geena Arata represented Plaintiff and Bryan J. Stoddard represented Defendant.   The court took the motions under advisement.   After carefully considering the parties' memoranda and arguments as well as the facts and law relevant to the pending motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Jill Holiday was in a car accident on June 17, 2020.   At the time of the accident, Holiday had automobile insurance coverage through Defendant Progressive Direct Insurance Company.   Holiday's insurance policy provided her with $3000 in Personal Injury Protection ("PIP") coverage as required by Utah law, Utah Code Ann. 31A-22-307.

The Policy provided the following relevant provisions in case of an accident or loss:

A person seeking coverage must:
1.   Cooperate with us in any matter concerning a claim or lawsuit;
2.   Provide any written proof of loss we may reasonably require;

3.   Allow us to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you or any other person seeking coverage, and answer all reasonable questions we may ask as often as we may reasonably require;

4.   Promptly call to notify us about any claim or lawsuit and send us any and all legal papers relating to the claim or suit; . . . .

9.   Authorize us to obtain medical and other records.

On June 17, 2020, Holiday sent a request to Progressive for PIP benefits under the Policy.  That same day, Cassandra R. Rutt, Progressive's claims representative handling the request, attempted to call Holiday at the telephone number Progressive had on file for her, but there was no answer and no ability to leave a voicemail message.   Rutt then sent Holiday an email "Request for Information" explaining the claim process and requesting that Holiday sign, complete, and return several attached forms—a PIP Application, a HIPAA Medical Authorization, and a Treatment and Insurance Information form.  The next day, Rutt again tried to call Holiday but there was no answer.

A week later, on June 24, 2020, Rutt received a faxed letter from the White & Garner law firm, advising her that their office was representing Holiday with regard to the June 17, 2020 accident and requesting that she direct all further correspondence on the matter to them and that she refrain from contacting Holiday directly. The letter also stated that any previous authorizations for release of information were revoked.

That same day, Rutt sent a written acknowledgment via fax to Garner's office, along with the policy declarations pages and the PIP packet she had previously sent directly to Holiday's email.  Later that day, Progressive received electronic notification that Holiday had electronically filled out and signed some of the PIP documents. However, there were several parts that Progressive viewed as important that were not filled out.

On July 1, 2020, Holiday began receiving chiropractic treatment for her injuries at Dixie

Chiropractic in St. George, Utah.  Plaintiff continued to receive chiropractic treatment until October 6, 2020.  She incurred approximately $8000 in medical expenses, exceeding her $3000 PIP benefits under the Policy.

On July 9, 2020, Rutt called White & Garner to follow up with them about the missing information in the PIP packet.  There was no answer, so she left a voicemail message indicating that she needed more information.  On July 16, 2020, having not heard back from White & Garner, Rutt again called to follow up on the missing information.  Again, there was no answer, so she left another message indicating that she needed more information.  Having still not heard back, on July 23, 2020, Rutt again called and left a message with White & Garner.

On July 27, 2020, having still not heard back from counsel, Rutt again called the law firm and was able to speak to someone, who informed her that the full PIP would be sent with the demand when Holiday was done receiving treatment.  On August 10, 2020, Rutt again called White & Garner to follow up on the claim.  There was no answer so she left a voicemail message asking if Holiday was still receiving treatment and when she could expect to see the completed PIP packet.

Having still not heard back from counsel on August 24, 2020, Rutt emailed counsel to request the completed PIP packet and for Holiday to verify the places at which or the providers with whom she was receiving treatment.  Having still not heard back from counsel on September 1, 2020, Rutt again called White & Garner.  There was no answer, and she left a voicemail message asking about the return of a completed PIP packet.  Rutt received a call back that same day and was told that Holiday was still "treating" and that the packet would be sent when she was done "treating."

On September 16, 2020, Rutt again called White & Garner to follow up on Holiday's

claim. There was no answer, and she left a voicemail message asking for a return call. That same day, Rutt sent counsel a Reservation of Rights ("ROR") letter. The letter gave White & Garner until September 30, 2020, to respond, and requested a recorded statement from Holiday.

Having not heard back from counsel, on September 24, 2020, Rutt again called White & Garner to follow up on the ROR letter. There was no answer, and she left a voicemail message asking for a call back. Having not heard from counsel by the deadline in the ROR letter, Rutt sent a conditional denial letter to counsel on October 1, 2020. The following day, Rutt received a voicemail from Holiday's counsel requesting that she resend the PIP application. Rutt faxed the PIP packet to White & Garner that same day.

Around December 7, 2020, Progressive received, via fax, the PIP documents from counsel. However, counsel did not respond to Rutt's request in the ROR letter to have Holiday submit to a recorded treatment statement. Counsel did not communicate to Progressive at that time that he was refusing to allow Holiday to do the statement.

On January 20, 2021, Rutt received a voicemail from counsel regarding the PIP packet and asking about getting the chiropractor paid. Rutt called back that same day but had to leave a voicemail indicating that she had the PIP packet but that she still needed to set up a recorded chiropractor/treatment statement to get the medical bills paid. Having not heard back from counsel, on January 26, 2021, Rutt again called White & Garner to follow up. There was no answer, so she left a voicemail message asking for a call back regarding the recorded treatment statement.

On February 2, 2021, Rutt received a call from Garner. When Rutt told him that she had been trying to get in touch with him to set up a recorded treatment statement, he said that it would not happen. Rutt explained the reasons why she believed a recorded statement was necessary, but

4

Garner told her that his client had no obligation to provide one.  Rutt responded that the Policy states that Progressive can take a recorded statement.  He asked that she send over the Policy.  Rutt emailed it to him that day.

That same day, Rutt sent another ROR letter to counsel via mail and email.  The ROR letter requested a response by February 16, 2021.  Rutt made a follow up call to counsel regarding the ROR letter on February 10, 2021, and had to leave a voicemail message.  Having not heard back from counsel on February 16, 2021, the deadline in the ROR letter, Rutt again called White & Garner to follow up.  There was no answer, so she left a voicemail message regarding the ROR letter.

Having not heard back from counsel by the end of that day, Rutt sent a denial letter to counsel.  Rutt did not hear from counsel until receiving notice of the lawsuit around March 9, 2021.  Rutt states that in all her verbal and written communications with counsel, she never said or suggested that the recorded statement regarding chiropractic treatment had to be done without the presence of counsel.  She would have allowed counsel to be on the conference call for the recorded statement.  The recorded statement would have been conducted by a short telephone call, lasting only a few minutes, and it would not have been under oath or conducted with a court reporter.

When asked in her deposition regarding her knowledge in February 2021 about Progressive wanting a short verbal statement from her about her treatment, Holiday said she did not recall.  Also asked in her deposition if she would have cooperated and provided a short verbal statement, Holiday responded, "Yes, I would have complied."

Holiday filed her Complaint against Progressive on February 24, 2021, in Utah State Court.   Holiday's lawsuit alleges two causes of action—breach of contract and breach of the

covenant of good faith and fair dealing regarding the payment of PIP benefits.   Progressive removed the action to this court on March 22, 2021, and filed its Answer that same day. Progressive did not move to dismiss the case or seek arbitration of the dispute at that time.

Holiday moved to consolidate three cases that her counsel had filed against Progressive involving different plaintiffs. Progressive opposed the motion, and the court denied the motion. The parties prepared an Attorney Planning Meeting Report, and the court entered a Scheduling Order.   The parties both served initial disclosures and engaged in settlement discussion on multiple occasions. On August 19, 2021, Holiday filed a motion for partial summary judgment, which Progressive opposed with a motion requesting that the court defer ruling on the motion until Holiday's deposition was taken.   The court granted Progressive's motion and allowed Holiday to renew her motion for partial summary judgment after the parties' conducted the deposition.

The parties scheduled but had to cancel Holiday's deposition.   Progressive then filed the pending motion to compel arbitration.   The parties rescheduled Holiday's deposition, which was taken before Holiday had to respond to Progressive's motion.   After Progressive took Holiday's deposition, Progressive determined that it had enough facts and information about the accident and Holiday's treatment to confirm PIP coverage.   In essence, the deposition acted as Holiday's verbal statement, albeit a more formal and time-consuming statement than the statement Progressive had originally sought.   Progressive issued payment on behalf of Holiday to Holiday's chiropractor.

The parties then completed their briefing of the motion to compel arbitration, and Holiday renewed her motion for partial summary judgment.

## DISCUSSION

### <u>Progressive's Motion to Compel Arbitration</u>

Progressive asks the court to compel arbitration in this case based on the language of the Policy.   Holiday brought the present lawsuit, alleging breach of the Policy.   However, the language of the insurance policy with respect to PIP coverage permits either party to elect arbitration for resolving a dispute.   The Policy provides as follows:

PART II – PERSONAL INJURY PROTECTION COVERAGE

ARBITRATION

If we and an insured person cannot agree on the amount payable under this Part II, then we or the insured person may elect to resolve the claim by submitting the claim to binding arbitration or through litigation.

If arbitration is elected by you or us, unless both parties agree otherwise, the arbitration will be governed by the rules and procedures set forth by Utah law relating to such claims.

This Policy provision is a valid agreement to arbitrate.   *Avedon Eng'g Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).   To determine whether a valid arbitration agreement exists, the court looks to "state law principles of contract formation to tell [it] whether an agreement to arbitrate has been reached."   *Id.*   A party resisting arbitration may raise "generally applicable contract defenses."   *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).   Utah law applies to this decision because Plaintiff listed Utah as her place of residence on her application for insurance, and the Policy states that it is governed by the law of the state listed on the insured's application and her place of residence.

If the court determines that the agreement is valid, it must then determine whether the dispute falls within the scope of the agreement.   *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004).   Here there is no dispute that the parties validly entered into the

Policy and that the Policy allows either party to elect arbitration to resolve a PIP claim for benefits.

Holiday, however, argues that Progressive impliedly waived any right to arbitrate the PIP dispute.   "[T]he right to arbitrate, like any other contract right, can be waived."   *Metz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482, 1489 (10th Cir. 1994).   In determining whether a party waived its right to arbitrate, the Tenth Circuit examines the following factors:

> "(1) whether the party's actions are inconsistent with the right to arbitrate;
> (2) whether 'the litigation machinery has been substantially invoked' and
> the parties 'were well into preparation of a lawsuit' before the party notified
> the opposing party of an intent to arbitrate; (3) whether a party either
> requested arbitration enforcement close to the trial date or delayed for a
> long period before seeking a stay; (4) whether a defendant seeking
> arbitration filed a counterclaim without asking for a stay of the proceedings;
> (5) 'whether important intervening steps [e.g., taking advantage of judicial
> discovery procedures not available in arbitration] had taken place'; and (6)
> whether the delay 'affected, misled, or prejudiced' the opposing party."

*Id.* (quoting *Peterson v. Shearson/American Express*, 849 F.2d 464, 465 (10th Cir. 1988)).

Holiday claims that Progressive has acted inconsistently with any right to arbitrate by engaging in various litigation-focused activities in this case. Progressive removed the case to this court, filed an Answer, participated in an Attorney Planning Meeting, served and received Initial Disclosures, opposed a Motion to Consolidate and a Motion for Partial Summary Judgment, and scheduled Holiday's deposition before filing a Motion to Compel Arbitration.   Progressive did not seek to compel arbitration after removal, did not plead or demand arbitration in its Answer, and did not mention that the dispute should be resolved by arbitration when it asked the court to allow Holiday's deposition to be taken before ruling on Holiday's Motion for Partial Summary Judgment.

When Holiday filed her motion for partial summary judgment, Progressive represented to the court in its Rule 56(d) motion opposing the motion that once Holiday's deposition was completed "there will likely be no issues of fact and the legal issue can

potentially be summarily resolved by the court."   Based on this representation, the court allowed Progressive to take Holiday's deposition.

Holiday argues that Progressive should not be able to take advantage of judicial discovery procedures and then get to hit reset this far along in the litigation by asking for the dispute to be arbitrated.   Progressive does not agree that arbitration would render the discovery and motions to be for naught.   It claims that the parties would have completed all of the discovery completed in this case to date whether this matter was in arbitration or before this court and that both parties would have also had the ability to seek summary disposition in arbitration.   Progressive also claims that it has asserted its right to arbitrate to Holiday since early in the process.   It states that the parties have frequently communicated regarding scheduling, discovery, and settlement, and that in these discussions, Progressive has also raised arbitrating the matter.

The primary dispute in this matter is that Progressive sought to obtain a verbal statement from Holiday regarding her treatment before making payment on the PIP claim.   Now that Progressive has taken Holiday's deposition, it has paid the PIP claim to her chiropractor.   As a result, Progressive argues that the only remaining dispute between the parties is Plaintiff's damages, which can be easily and efficiently decided in arbitration.

Progressive points out that there is a "strong presumption against [arbitration] waiver in Utah."   *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 24.   "Waiver of the right to arbitrate must be intentional, and inferring waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to disregard its right to arbitrate."   *Id.*

In *Central Florida Investments*, the court found that the defendant did not waive its right to

9

arbitrate.  *Id.* ¶ 27.   But in that case, the defendant filed a counterclaim seeking arbitration and a motion to dismiss raising the issue of arbitration as a basis for dismissal.  *Id.* ¶¶ 5, 6.   The defendant then timely filed a motion o compel arbitration ten days after the court denied its motion to dismiss on other grounds.  *Id.* ¶ 9.   While the parties in that case conducted discovery while they were awaiting the court's decision, the defendant timely raised the arbitration.   The defendant's actions were never inconsistent with the right to arbitrate.  *Id.* ¶ 29.

"Whether a party has waived the right to arbitrate is a factually intensive determination" that must be done "on a case-by-case basis."  *Id.* ¶ 23.   This case is factually distinguishable from *Central Florida Investments*.   Progressive never raised arbitration in an answer, counterclaim, or motion.   And it did not pursue discovery merely during the pendency of the court's determination on a motion raising arbitration as a reason for dismissing the case.   Progressive allowed the case to significantly progress before raising the issue with the court.   The court determines that Progressives' actions allowing the substantial machinery of litigation to be invoked were inconsistent with the right to arbitrate.   The court does not believe that the request to arbitrate is some sort of nefarious effort designed to reset the litigation.   And the court agrees that the discovery and dispositive motions could be used in the arbitration process.   But, even if Progressive verbally told Holiday that it was interested in arbitrating the dispute, Progressive never formally asserted that right and allowed the case to progress so significantly into the litigation process that it waived its right to invoke arbitration under the Policy.   Accordingly, the court denies Progressive's Motion to Compel Arbitration.

## Holiday's Motion for Partial Summary Judgment

Holiday seeks partial summary judgment that Progressive is liable for overdue PIP benefits, attorney's fees, and costs pursuant to Utah Code Ann. § 31A-22-309.   Utah Code Ann. §

31A-22-307(1) provides that PIP benefits "include . . . the reasonable value of all expenses for necessary . . . medical services," up to the amount provided for in the insurance policy, but not less than $3,000.   PIP benefits "are overdue if they are not paid within 30 days after the insurer receives reasonable proof of the fact and amount of expenses incurred during the period."   Utah Code Ann. § 31A-22-309(5)(b).   In other words, insurers must pay PIP benefits for "the reasonable value" of "necessary" medical services within thirty days of receiving "reasonable proof" of the fact and amount of the insured's reasonable and necessary expenses.   If benefits are not paid within that timeframe, they are deemed overdue and penalties, such as interest and attorney's fees, apply.   "[T]he legislative intent of PIP benefits is to preclude vexatious lawsuits against tortfeasors to recover relatively minor damages and to protect the injured party from bearing the expense of lengthy delay associated with litigation to establish the fault of the tortfeasor."   *Warren v. Melville*, 937 P.2d 556, 558-59 (Utah Ct. App. 1997).

Holiday argues that Progressive waived any objections to her claim under Utah Code Ann. § 31A-22-309 by failing to pay her claim within 30 days.   Section 31A-22-309 gave Progressive 30 days to review and pay Holiday's claim once it received "reasonable proof of the fact and amount of expenses incurred during the period."   Holiday claims that she sent in a request for PIP benefits on June 17, 2020, and Defendant did not pay PIP benefits until December 6, 2021, after it took Holiday's deposition in this action.   Therefore, Holiday seeks summary judgment that Progressive's payment was untimely as a matter of law and a ruling that she is entitled to attorney's fees and interest as damages.   Progressive, on the other hand, argues that it was entitled to a reasonable investigation of the claim based on the factual circumstances present in this case and the court cannot rule as a matter of law that it was required to pay PIP benefits prior to speaking with Holiday.

Holiday asserts that Progressive had reasonable proof of her reasonable and necessary medical expenses at several different points in time.   As stated above, Holiday references June 17, 2020, as the dates she made her claim and implies that the 30-day time period for Progressive should have begun to run on that date.   On that date, however, Progressive informed her that she had failed to complete several important parts of the application.   In addition, Progressive repeatedly contacted Holiday for more information and she responded that she would provide the information after she had completed her treatment.   Holiday also claims that on October 27, 2020, her chiropractor sent her medical and billing records to Progressive and the 30-day time period for Progressive to respond began to run.   But on that date, Holiday had still not completed her PIP application, medical authorization, and the treatment and insurance information claim form. On December 7, 2020, Holiday provided the requested PIP application, medical authorization, and the treatment and insurance information claim form.   However, by that time, due to the delay in providing information and length of her apparent treatment, Progressive had requested to speak to Holiday regarding her treatment.   Progressive did not pay on the claim because Holiday refused to speak with it regarding her treatment.   Holiday asserts that Progressive wrongfully withheld PIP benefits during the time it was requesting a recorded treatment statement.

Holiday argues that the PIP statute does not authorize an insurer to continue to request additional information more than thirty days after the insurer has received the claim and the requested loss information, which she claims she had provided by December 7, 2020.   However, Progressive contends that the statute and Policy at issue entitle it to information relating to whether the medical services were reasonable and necessary, which in this case would include a telephonic statement from Holiday.

Holiday asserts that the court should grant Plaintiff's summary judgment motion because

Progressive's policy allows Progressive to deny coverage based on requirements not permitted by, and in direct conflict with, Utah Code Ann. § 31A-22-309(5)(B).   "When the meaning of [a] statute can be discerned from its language, no other interpretive tools are needed."   *State v. Harker*, 2010 UT 56, ¶ 12.   Here, Holiday contends that Utah's statute does not contain any language making a recorded treatment statement, a medical examination, a HIPAA authorization, or any written proof of loss a condition to the recovery of PIP benefits.   She further claims that to infer that a condition is impliedly permitted is contrary to proper statutory interpretation.   "When interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning."   *Marion Energy, Inc. v. KFJ Ranch Partnership*, 267 P.3d 863 (Utah 2011).   Courts "presume that the expression of one [term] should be interpreted as the exclusion of another."   *Id.*   Therefore, courts "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful."   *Id.*

Holiday argues that the statute's silence as to the requirement of a recorded statement means that the exclusion of a recorded statement was on purpose and should not be a condition precedent to receiving PIP benefits.   But the statute conditions payment of PIP benefits on the insurer's receipt of "reasonable proof of the fact and amount of expenses incurred."   Utah Code Ann.   § 31A-22-309(5)(b).   The statute does not attempt to define what constitutes "reasonable proof."   Holiday asserts that it is not the court's job to supplement terms in a statute where none are found, but when the Legislature does not define a term such as "reasonable proof", it leaves it courts and/or juries to determine it.

The Utah Supreme Court has explained the purpose of PIP benefits, stating that "PIP benefits were not intended to provide an automatic reward or a 'windfall' for being involved in an accident by requiring payment when there was no loss actually suffered."   *Prince v. Bear River*

*Mut. Ins.*, 2002 UT 68, ¶ 18.   "A PIP insurer can deny coverage if no loss was actually suffered or if the expenses incurred were outside the scope of coverage as set forth in Utah Code section 31A-22-307(1) and the PIP insurance policy."   *Id.*   In *Prince*, the court analyzed and focused on the term "necessary" in the PIP statute and compared that with additional language in the policy contract which explained in more detail the principle of "unnecessary medical expenses."   *Id,* at ¶ 23.   The court took no issue with the fact that the insurance policy contained more detail about the principle of medical necessity than the statute did.   The court clarified that if the insured incurred unnecessary medical expenses, then the insurer "was not required to pay PIP benefits to cover those expenses."   *Id.* at ¶ 24.

Because an insurer is specifically allowed by Utah law to reject PIP claims for unnecessary medical expenses, an insurer must be entitled to reasonably test and investigate the legitimacy of PIP claims.   Such a reasonable investigation, as a practical matter, presupposes the insured's cooperation.   In fact, Utah's PIP statute requires that insurers "shall report to the commissioner any pattern of overcharging, excessive treatment, or other improper actions by a health provider within 30 days after the day on which the insurer has knowledge of the pattern."   Utah Code Ann. § 31A-22-307(2)(d).   The court cannot rule that it is unreasonable in every factual scenario for an insurer to ask to speak with the insured to explore facts relating to whether the medical treatment was "necessary."   Holiday claims that only a doctor can determine whether treatment was necessary, but there could be instances in which an insurer would need to speak to both the patient and the provider to determine whether care is reasonable and necessary.   Reasonableness determinations are almost always factually intensive.

In addition, a Policy requiring cooperation from the insured is not specifically prohibited by the PIP statute prohibited by the language requiring reasonable proof.   The Utah Supreme

Court noted and expressed no dismay with the fact that "most policies require cooperation from the insured." *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 236 (Utah 1985).   The PIP statute does not prohibit an insurer from including cooperation conditions in policy contracts.   Holiday argues that the Policy cannot go beyond the literal language of the PIP statute.   But the statute uses words such as "reasonable" and "necessary" without defining them and does not prohibit an insurer from contracting in more detail regarding what constitutes reasonable proof or medical necessity.

The idea of parties contracting for terms not specifically prohibited by the PIP statute was discussed by the Utah Court of Appeals in *Crowther v. Nationwide Mut. Ins.*, 762 P.2d 1119, 1123 (Utah Ct. App. 1988).   In *Crowther*, the court found that an insurer's policy prohibition of "stacking benefits" was not inconsistent with the goals of the PIP statute.   *Id.*   The court explained that "insurance companies establish no-fault premiums with the expectation that the remainder of the clauses in their policies will be enforced.   It would be inappropriate for this Court to impose a public policy which does not necessarily serve the stated legislative goals."   *Id.* The court then added an important observation about the parties having freedom to contract: "because of the policies stated in the Act and because the Act neither prohibits nor requires stacking, we hold that the parties were free to contract for the provision eliminating stacking benefits under more than one policy and that the contract does not contravene public policy."   *Id.*

While *Crowther* was not dealing with a cooperation clause or an insurer's request for a recorded statement from the insured, the underlying principle is helpful here.   When the PIP statute is silent on a specific question or issue, the freedom of the parties to contract is preserved as long as it does not violate public policy.   This principle is also supported by *Call*, which stated that "an insurer may include in a policy any number or kind of exceptions and limitations to which an insured will agree unless contrary to statute or public policy." 712 P.2d at 233.   And in *Ross v.*

*Producers Mut. Ins.*, the court recognized that "the general judicial attitude toward insurance policies is to sustain them on grounds of public policy wherever possible."  296 P.2d 339, 343 (Utah 1956).

Progressive's request that Holiday cooperate and provide a brief telephone statement regarding her treatment does not violate public policy as a matter of law.   A short, quick telephonic statement as requested in this case does not automatically violate the general purpose behind the PIP statutory scheme of allowing payment quickly and without legal action.   The statute clearly still balances competing interests.   In *Jamison v. Utah Home Fire Ins.*, the Utah Supreme Court explained that "[t]he principle which best serves the objective to be desired" with the PIP statute "is to give both parties the benefit of a sensible, even-handed and practical application of the statute, under the assumption that all of its language was used advisedly and in harmony with its purposes. . . . Only by keeping awards within reason, and excepting therefrom claims that might be unrealistic, fanciful, or perhaps even fraudulent, can the stated objective, to effectuate savings in the rising costs of automobile accident insurance be accomplished. Otherwise, it is obvious that necessary increases in premiums would defeat, rather than promote, the purposes of the Act."   559 P.2d 958, 960 (Utah 1977).

In other words, it would not be consistent with the overall public policy behind the PIP statute to require insurers to immediately pay PIP benefits without question simply because the insured provided medical bills.   That is precisely why the statute requires "reasonable proof" of claimed expenses that are medically "necessary."   There must be checks and balances in the system to prevent fraud and waste or everyone's underlying premiums would increase.

In *Jamison*, the court addressed the provision in the PIP statute that benefits become due once the insurer receives "reasonable proof of the fact and amount of expenses incurred."   *Id.*

With that requirement in mind, the court explained that "it is also pertinent to observe that the general rule is that an award of damages cannot properly be made on mere possibility or conjecture, there must be a firmer foundation.   That is, any such award must be supported by proof upon which reasonable minds acting fairly thereon could believe that it is more probable than not, that damage was actually suffered."   *Id.* at 961-62.

There is no basis for Holiday's position that the request for a short statement goes beyond the literal language of the PIP statute.   There does not need to be a specific provision stating what reasonable proof entails in every factual situation.   Using Holiday's logic that neither the court nor the fact finder may interpret what meets the reasonable proof requirement, we would have to conclude that the statute also fails to identify medical bills and records as "reasonable proof."   A fact finder must determine what is reasonable.

The question then becomes whether Progressive's cooperation condition that Holiday submit to a short, recorded telephonic statement regarding her chiropractic treatment invoices is inconsistent with the policy of "reasonable proof."   The Policy allows Progressive "to take signed and recorded statements, including statements and examinations under oath," and requires the person seeking coverage to "answer all reasonable questions we may ask as often as we may reasonably require."   The policy uses the term reasonably twice.   It is clearly attempting to require only reasonable proof as provided for in the PIP statute.   In this case, the treatment was not merely one or two doctor's visits related to the accident.   Holiday received treatment for several months.   The court cannot conclude, as a matter of law, that it was unreasonable for Progressive to ask Holiday to provide a short oral statement supporting this protracted medical treatment.

Holiday asks the court to rule on the reasonable proof requirement and the reasonableness of Progressive's cooperation conditions as a matter of law.   But reasonableness is generally a

question of fact for the fact finder.   Several courts from other states have determined that

"[w]hether such reasonable proof was received is for the fact finder."   *See, e.g., Klein v. State*

*Farm Mut. Auto. Ins.*, 948 P.2d 43, 48 (Colo. App. 1997); *Glick v. Progressive N. Ins. Co.*, 2014

WL 10987217, at *4 (Pa. Super. Ct. Han. 24, 2014) ("what will constitute 'reasonable proof' is a

question of fact answered on a case-by-case basis after review of relevant evidence addressing

several factors, including coverage, causation, and medical necessity.").

   The facts in this case demonstrate that there are disputed facts regarding whether Holiday,

through her counsel, provided the "reasonable proof" necessary for her PIP claim.   The court

concludes that a reasonable jury could conclude that Progressive's request for a telephonic

statement was reasonable.   The fact finder can decide these issues when all the facts are laid

before it.   When asked at her deposition whether she would have given a short statement to

Progressive, Holiday responded affirmatively.   Her own testimony supports Progressive's

position that its request was reasonable under the Policy's provisions, the PIP statute, and the

factual circumstances.   Rather than submit bills and medical documents as they were incurred,

Holiday did not provide any information until she was "done treating."   Even when Progressive

obviously became concerned because treatment was taking several months—for only a $3000

benefit—Holiday's counsel did not provide information.   A jury will need to weigh whether

Progressive reasonably requested a telephonic statement.

   Holiday's reliance on the Florida Supreme Court is misplaced.   Florida courts describe

their PIP statutory scheme in language materially different than Utah courts.   The Florida

Supreme Court states that its PIP scheme is meant to provide "virtually automatic payment."

*State Farm Mut. Auto. Ins. v. Nichols*, 932 So.2d 1067, 1077 (Fla. 2006).   Florida law also

provides that "Florida's no-fault laws are construed liberally in favor of the insured."   *Fla. Med.*

& *Inj. Ctr., Inc. v. Progressive Exp. Ins.*, 29 So.3d 329, 341 (Fla. Dist. Ct. App. 2010).   Florida's

tradition contrasts with the Utah Supreme Court's statements in *Jamison* about the PIP statute

being "even-handed," and in *Prince* about PIP benefits not being "intended to provide an

automatic reward."   This court's role is to determine how the Utah Supreme Court would rule.

And Florida's differing approach does not appear to be a position that the Utah Supreme Court

would be likely to adopt.

Colorado courts appear to address the issue more like the Utah Supreme Court.   In one

case, the court rejected the plaintiff's argument on "reasonable proof" that "a health care

provider's bill with an accompanying explanation alone establishes reasonable proof" because the

statute required the submitted proof to "demonstrate that the expenses incurred were reasonable

and necessary and accident-related."   *Klein v. State Farm Mut. Auto. Ins.*, 948 P.2d 43, 48 (Colo.

App. 1997).   "Accordingly, the thirty-day payment period does not begin until the insurer

receives reasonable proof that the expenses were reasonable and necessary and were incurred for

bodily injury arising out of the use or operation of a motor vehicle.   Whether such reasonable

proof was received is for the fact finder."   *Id.*   Given the Utah Supreme Court's requirement that

benefits are not automatic and the requirements of the statute should be applied even handedly, the

court believes the Utah Supreme Court would similarly require the determination of reasonable

proof in this case to go to a fact finder.

Holiday makes much of the fact that the purpose of the PIP statute was to allow for quick

compensation that did not require legal action, but she is the party that instigated the legal action in

this case.   She chose to engage in legal action instead of spending a few minutes on the telephone

with Progressive.   Both parties need to act in accordance with the statute, statutory purpose, and

reasonable terms of the insurance policy.   A reasonable jury could find that Holiday, not

Progressive, caused the delays in this case and that her failure to provide timely information

throughout her treatment period is what led to progressive requesting a telephonic statement.

Moreover, Holiday relies heavily on a Florida case in which the insurer required an

examination under oath ("EUO") without counsel.   However, this case involves a short,

telephonic statement from Holiday with her counsel on the conference call.   The statement would

have been recorded but not under oath.   While Progressive's cooperation conditions include an

option for an EUO, that was not requested here and did not form the basis for the ROR letters or

conditional denial letters.   There is no reason for the court to determine whether any of the

conditions in Progressive's conditions of cooperation are reasonable if those conditions were not

asked of Holiday.   In a case where fraud was suggested, Progressive may reasonably require an

EUO.   But those facts are not before the court and there is no reason for the court to consider

whether the condition would be reasonable in other factual situations.

Although Holiday claims that Progressive waived objections to her PIP claim, that

argument is based on the underlying premise that Holiday provided "reasonable proof" when she

says she did.   Whether that proof was reasonable or whether Progressive could reasonably require

a telephonic statement to constitute reasonable proof is the crux of this case.   Based on the facts

and law before the court, the court concludes that the fact finder will have to resolve it.   Therefore,

the court cannot conclude as a matter of law that Progressive waived its objections to Holiday's

claim when it disagreed with her regarding what constituted reasonable proof.

Finally, Progressive's cooperation condition of requiring a short telephonic statement does

not violate the attorney-client relationship.   Progressive's policy does not state that counsel is

prohibited from being present, and Progressive never told Holiday's counsel that he could not be

present.   Progressive states that it would have allowed counsel to be present on the conference

call.   Therefore, the court does not need to address any issues relating to whether the cooperation condition violates the attorney client privilege.

Although Holiday asks this court to determine as a matter of law that an insurance company can never ask an insured for a recorded telephonic statement in connection with PIP benefits, the court declines to do so.   This court must determine that issue based on the language of the Utah PIP statute, rulings from Utah appellate courts, and predict how Utah's Supreme Court would likely rule.   *Stickley v. State Farm Mut. Ins.*, 505 F.3d 1070, 1077 (10th Cir. 2007).   The statute requires an insured to provide "reasonable proof" of "necessary" medical services.   In doing so, the statute requires both the insured and insurer to meet a factually intensive reasonableness standard.   Utah courts have found that the statute is intended to be applied even-handedly between the insured and insurer.   Utah courts also recognize the rights of the parties to contract to conditions in their insurance contracts.   Given that the parties contractually agreed to certain cooperation conditions and Holiday refused to cooperate with her insurer's request for information in connection with her PIP claim for months, a jury must determine whether the request for a short telephonic statement was reasonable.   The court cannot conclude as a matter of law that no reasonable jury could side with Progressive. Accordingly, the court denies Holiday's motion for partial summary judgment.

## CONCLUSION

Based on the above reasoning, Defendant Progressive Direct Insurance Company's Motion to Compel Arbitration [ECF No. 25] is DENIED and Plaintiff Jill Holiday's Motion for Partial Summary Judgment [ECF No. 35] is DENIED.

DATED this 2d day of May, 2022.

BY THE COURT

DALE A. KIMBALL
United States District Judge